The STATE of Ohio, Appellee,

v.

BAY, Appellant.

[Cite as *State v. Bay* (1998), 130 Ohio App.3d 772.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–980084, C–980085.

Decided Dec. 18, 1998.

*Fay D. Dupuis,* City Solicitor, *Terrence R. Cosgrove,* City Prosecutor, *Evelyne Martial* and *Melanie Reising,* Assistant City Prosecutors, for appellee.

*George W. Clark,* for appellant.

GORMAN, Judge.

Defendant-appellant James M. Bay appeals from his convictions for disorderly conduct on the public sidewalk in front of a bar and for resisting arrest fifteen to thirty minutes later.[1] He contends that because his arrest for disorderly conduct was complete once he was in custody outside the bar, he could not be convicted for resisting that arrest outside the Hamilton County Justice Center. We disagree.

The events at issue began when Bay became intoxicated at a bar located on Pete Rose Way in Cincinnati. He admitted consuming eight beers and five shots of hard liquor. After becoming unruly, Bay was ejected by bar personnel. Police officers found Bay on the sidewalk. He had slurred speech and a strong smell of alcohol, and was swaying wildly. After speaking with officers for several minutes, Bay became belligerent. He was taken into custody by the police when he lay supine on the pavement and began to extend his arms and legs in the

---

1. We have *sua sponte* removed these consolidated appeals from the accelerated calendar.

motion commonly described as making snow angels. The date was July 17, 1997. Three officers were required to handcuff Bay and to assist him into a cruiser.

The officers transported Bay to the Hamilton County Justice Center for intake processing: the filing of a complaint and arrest slip, fingerprinting, booking, and the completion of the charging process. Some fifteen to thirty minutes after first encountering police officers, Bay arrived outside the intake area. There, he refused to leave the cruiser. He ultimately walked some ten feet toward the building before going limp and falling to the ground. Officers struggled with Bay and carried him inside for processing and for medical treatment.

Bay was charged with disorderly conduct, in violation of R.C. 2917.11(B)(1), for his actions outside the bar. He was charged with resisting arrest, in violation of R.C. 2921.33, solely for his actions outside the intake area of the Justice Center. Following a trial before a jury, and the denial of his motions for judgment of acquittal, Bay was found guilty of both charges and sentenced as appears of record.

In his second assignment of error, Bay contends that the trial court erred in denying his motions for judgment of acquittal and in sending to the jury the issue of whether, outside the Justice Center, he could have resisted an arrest that had been completed outside the bar on Pete Rose Way.

█  When a motion to acquit, made pursuant to Crim.R. 29, has been overruled by a trial court, the question for a reviewing court is whether, viewing the evidence in the light most favorable to the state, reasonable minds can reach different conclusions as to whether each material element of the charged crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

█  R.C. 2921.33(A) provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." In this case, a material element of the state's burden of proof, therefore, was to show that Bay's initial refusal to leave the cruiser, his going limp, and his ensuing refusal to enter the justice center interfered with a lawful arrest. While going limp constitutes resisting or interfering, *State v. Keegan* (1990), 67 Ohio App.3d 824, 588 N.E.2d 928, Bay contends that because his arrest for disorderly conduct had been completed at the time that the police officers had (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention, and (4) which was so understood by Bay, he could not, as a matter of law, have been convicted of resisting an arrest that ended some fifteen to thirty minutes earlier. See *State v. Darrah* (1980), 64 Ohio St.2d 22, 26, 18 O.O.3d 193, 195, 412 N.E.2d 1328, 1330, quoting *State v. Barker* (1978), 53 Ohio St.2d 135, 139, 7 O.O.3d 213, 215–216, 372 N.E.2d 1324, 1328.

Bay's reliance upon the well-established and often-cited four-factor test, however, is misplaced. He misconstrues the purpose behind the *State v. Darrah* test. In concluding that a trucker was not under arrest when he was stopped and ticketed for violating a traffic-control device, the Ohio Supreme Court, in *Darrah,* identified when a police officer's seizure of a person is tantamount to a formal arrest. *Id.,* 64 Ohio St.2d at 25, 18 O.O.3d at 194–195, 412 N.E.2d at 1330.

While the *State v. Darrah* test does not, by itself, resolve the question of whether a formal arrest ends once the four factors are demonstrated, in the very next sentence, the Supreme Court noted, "Furthermore, an arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." *Id.,* 64 Ohio St.2d at 26, 18 O.O.3d at 195, 412 N.E.2d at 1331. A formal arrest, therefore, is "not necessarily an instantaneous event," *State v. Bolden* (1990), 104 Ore.App. 356, 359, 801 P.2d 863, 864, but rather is a process beginning with the seizure of a person, which can encompass acts necessary to effect the formal charging of a crime. Therefore, before a defendant is formally charged, temporal and spatial limits are factual issues from which the trier of fact determines whether the arrest is complete.

Here, viewing the evidence in a light most favorable to the state, reasonable minds could have differed as to whether all the elements of resisting arrest were proven, including whether, outside the justice center, the officers were still engaged in completing the formal charging process, thus precluding an entry of judgment of acquittal. *State v. Bridgeman,* syllabus. Therefore, the second assignment of error is overruled.

Bay's first assignment of error, in which he challenges the sufficiency of the evidence adduced to support his conviction for disorderly conduct, is overruled, as the record reflects substantial, credible evidence from which the jury could have reasonably concluded that all elements of the offense of disorderly conduct were proven beyond a reasonable.doubt. *State v. Waddy* (1991), 63 Ohio St.3d 424, 588 N.E.2d 819.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.