[Cite as *State v. Barnes*, 2018-Ohio-3894.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-170355 |
| | | C-170356 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-17CRB-6180 |
| | | C-17CRB-6181B |
| vs. | : | |
| | | *O P I N I O N.* |
| JARVIS BARNES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: September 26, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**MILLER, Judge.**

{¶1}   Following a jury trial, Jarvis Barnes was convicted of one count of resisting arrest, in violation of R.C. 2921.33(A), and one count of resisting arrest, in violation of R.C. 2921.33(B).  The trial court sentenced Barnes to 90 days in jail, with credit for 18 days served, for count one, to be served consecutively to 180 days in jail, with credit for 46 days served, for count two.  We affirm.

### Facts

{¶2}   The Springfield Township Police were dispatched to a WesBanco branch to respond to a call about a man trying to pass a bad check.  The police detained the man, Antonio Johnson, who told them that he was kidnapped at gunpoint by Barnes and forced to pass the bad check.  Johnson pointed out Barnes in his car in a parking lot across the street.  Unbeknownst to the police at the time, Johnson had fabricated the story of Barnes's involvement and only coincidentally encountered Barnes prior to entering the bank, knowing him as a friend of his brother.

{¶3}   The police called for backup, surrounded Barnes's vehicle at his next stop in a Boost Mobile parking lot with their guns drawn, and ordered him to exit from his vehicle and get on his knees.  Barnes was patted down, handcuffed, and placed into the back of a police cruiser.  Barnes, who testified that he was en route to an interview, became agitated about the stop and detention.  While in the cruiser, Barnes attempted to hide an object in his pants, which drew suspicion from police officers.  Barnes told an officer that the object was a cell phone, but refused to surrender it and continued to try to hide the object in his pants.  Barnes had to be removed from the cruiser and wrestled with for police to retrieve what turned out to be a cell phone.  Barnes was then taken to the police department, where another

2

struggle ensued. Barnes went limp when officers tried to transport him to the jail, and kicked an officer while being transferred into another police cruiser.

## Argument and Analysis

{¶4} In his first assignment of error, Barnes claims that the trial court erred in admitting into evidence Johnson's statements to the police. "The trial court has broad discretion in the admission of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." *State v. Beck*, 2016-Ohio-8122, 75 N.E.3d 899, ¶ 27 (1st Dist.), citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶5} Barnes argues that Johnson's statements, in which he claimed he was kidnapped at gunpoint by Barnes and forced to pass a bad check, were hearsay and admitted to prove that Barnes's initial arrest was lawful. A conviction under R.C. 2921.33(A) and (B) requires a lawful arrest. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted," which is inadmissible but by exception. Evid.R. 802.

{¶6} Here, Johnson's statements were introduced during the direct examination of the arresting officers, who explained that the probable cause for arresting Barnes was Johnson's statements. Officer Mullens testified that the statements were later discovered to be untrue—that Barnes was not in fact involved in passing bad checks with Johnson. Importantly, a police officer may only conduct an arrest if the police officer has probable cause to believe that the arrestee had committed or was committing a felony offense. R.C. 2935.04; *State v. Allen*, 2 Ohio App.3d 441, 443, 442 N.E.2d 784 (1st Dist.1981); *see State v. Brown*, 115 Ohio St.3d

55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 66; *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

{¶7} Accordingly, Johnson's statements to police officers were not impermissible hearsay. They were not admitted for their truth, as they were declaredly untrue. Nor were they introduced to prove that Barnes had committed a crime and that his arrest was lawful. Instead, Johnson's statements were introduced to explain the actions of the police officers and give context to Barnes's arrest. Based on Johnson's statements, the police believed Barnes to be an armed and dangerous felon, and that they had probable cause to immediately detain him. Therefore, we overrule Barnes's first assignment of error.

{¶8} In his second assignment of error, Barnes argues that his convictions were based on insufficient evidence. In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶9} Barnes asserts that he could not have been charged with misdemeanor resisting arrest under R.C. 2921.33(A) and (B) for any of his actions subsequent to being handcuffed and placed in the back of the police cruiser, because his arrest had already been completed. Instead, Barnes argues that he should have been charged with felony escape under R.C. 2921.34. In order to reach this conclusion, Barnes asks us to overrule *State v. Bay*, 130 Ohio App.3d 772, 721 N.E.2d 421 (1st Dist.1998), wherein we affirmed a conviction for resisting arrest where a defendant refused to leave a police cruiser and then purposely went limp while he was being taken into the Hamilton County Justice Center for intake processing. In *Bay*, we

4

held that the defendant's arrest did not end with his initial detention and handcuffing. Rather, an arrest encompasses placing a defendant in a police cruiser and transporting him to jail or a detention facility. *See State v. Darrah*, 64 Ohio St.2d 22, 26, 412 N.E.2d 1328 (1980). Thus, a charge for resisting arrest is appropriate where there is interference in this process. We decline to overrule *Bay*, and find the facts of this case indistinguishable. Barnes was handcuffed and placed into a police cruiser, and then struggled with police officers in two different instances prior to being jailed. After reviewing the record, we hold that the state presented sufficient evidence to prove Barnes resisted arrest on two separate occasions. We therefore overrule Barnes's second assignment of error.

{¶10} In his third assignment of error, Barnes argues that his convictions were against the manifest weight of the evidence. In reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and thereby created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶11} Barnes asserts that excessive force was used against him by the arresting police officers, which justified his resistance to the arrest. The Ohio Jury Instructions recognize excessive force as an affirmative defense to resisting arrest. 2 *Ohio Jury Instructions* CR Section 521.33, citing *State v. Logsdon*, 3d Dist. Seneca No. 13-89-10, 1990 WL 197883, *1 (Dec. 4, 1991). "The defendant effectively admits his resistance, if only to show that it was necessary in order to protect himself from the officer's excessive force." *Logsdon* at *2.

{¶12} "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest * * * should be analyzed under the Fourth

Amendment and its 'reasonableness' standard." (Internal quotations omitted.) *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 22. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene * * * [and] must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*, quoting *Graham v. Connor*, 490 U.S. 386, 396-397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

{¶13} Here, officers believed that Barnes may have abducted a man at gunpoint and forced him to cash a bad check at the time of his arrest. It is unfortunate that as a result of Johnson's false statements to the police Barnes was even involved in the encounter, which could have very easily resulted in his death or serious injury. Barnes's confusion, alarm and distress at the time of the stop are understandable. However, this case begins where Barnes acted on his own volition in two instances to interfere with his arrest.

{¶14} In the first instance, Barnes was in a police cruiser while attempting to hide an object in his pants, which officers believed was possibly a gun. Video footage from a storefront and a cell phone showed several officers attempting to restrain Barnes's body and hands in order to retrieve the object, which they discovered was his cell phone. Barnes argues, in part, that he was noncompliant in this instance because the officers did not explain why he was being arrested. A defendant's knowledge is not part of the affirmative defense of resisting arrest. Resisting arrest is justified where the defendant is effectively being assaulted and responds with reasonable force to protect his safety, *see Logsdon* at *2—not where the defendant is ignorant of his charges and reluctant to surrender his personal property.

{¶15} In the second instance, Barnes was at the police department and began acting erratically and struggling with police officers as they tried to transport him to jail. Video footage from the lobby of the police department shows a distraught Barnes being arrested, but does not show the struggle to which Barnes and the arresting officers testified. After reviewing the entire record—including the video evidence, testimony of the arresting officers and Barnes—we do not agree that Barnes's convictions were against the manifest weight of the evidence. We overrule Barnes's third assignment of error.

## Conclusion

{¶16} All assignments of error having been overruled, the trial court's judgments are affirmed.

Judgments affirmed.

**MOCK, P.J.,** and **DETERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.